IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FREDERIC CHARDÓN-DUBOS,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH R. BIDEN, JR., AND THE UNITED STATES OF AMERICA,<br><br>Defendants. | CIV. NO.: 23-1138 (SCC) |

**OMNIBUS OPINION AND ORDER**

Pending before the Court are Motion to Dismiss by Defendants Joseph R. Biden, Jr., and the United States of America ("Defendants"), *see* Docket No. 21, and Motion for Leave to Amend or Supplement the Complaint by Plaintiff Frederic Chardón-Dubos ("Plaintiff"), *see* Docket No. 29. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Motion for Leave to Amend or Supplement the Complaint is **DENIED**.

**I. Background**

Plaintiff contends that, by signing Executive Order 14,067, 87 Fed. Reg. 14,143 (March 14, 2022) ("Executive Order"),[1] President Joseph R. Biden, Jr., ("President")

---

[1] The Executive Order directs various federal agencies to provide the President with reports, assessments, frameworks, and recommendations on various issues regarding digital financial assets, including a potential Central Bank Digital Currency ("CBDC"). *See* Executive Order, § 4.

overstepped his executive power, violated his oath of office, circumvented Congress's authority to coin money, and violated the First Amendment to the U.S. Constitution. Plaintiff asks for "judgment [to] be entered against Biden overturning Executive Order 14067" and, citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Puerto Rico Civil Code, for "compensatory and punitive damages" of five million dollars. Docket No. 1, at ¶¶ 1–2, 56–57, pp. 12–13. Plaintiff finally demands trial by jury. *Id.* at ¶ 58.

Defendants moved to dismiss Plaintiff's Complaint. *See* Docket No. 21. Instead of filing a response to the Defendants' Motion to Dismiss, Plaintiff filed a Motion for Leave to Amend or Supplement the Complaint, *see* Docket No. 29, and a proposed amended complaint, *see* Docket No. 29-1. The Defendants filed a motion in opposition, *see* Docket No. 34, to which Plaintiff replied, *see* Docket No. 43.

**II. Discussion**

The Court will first consider Defendants' Motion to Dismiss and will then turn to Plaintiff's Motion for Leave to Amend or Supplement the Complaint.

### i. Defendants' Motion to Dismiss

The Motion to Dismiss advances several grounds in support of dismissal. The Court begins and ends its discussion with standing. The Court then examines supplemental jurisdiction over the Puerto Rico law claim.

### a. Standing

Federal courts are inherently limited in their reach, *see, e.g., Belsito Commc'ns, Inc. v. Decker*, 845 F.3d 13, 21 (1st Cir. 2016), and the Court thus "begin[s] by ensuring that [it has] jurisdiction to reach the questions presented." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016). The Court starts with Defendants' subject-matter jurisdiction defense under Rule 12(b)(1) given that, "[w]hen," as here, "a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter." *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 149 (1st Cir. 2002) (citations omitted). Rule 12(b)(1) defenses are assessed before Rule 12(b)(6) defenses because, "if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." *Id.* at 150.

Rule 12(b)(1) motions are "conceptually distinct" from Rule 12(b)(6) motions; however, "the same basic principles apply in both situations." *Lyman v. Baker*, 954 F.3d 351, 359 (1st Cir. 2020) (quoting throughout *Hochendoner*, 823 F.3d at 730–31). Therefore, the Court takes "the well-pleaded facts" in the Complaint "as true" and views them "in the light most favorable to" Plaintiff, drawing "all reasonable inferences from those facts" in the Plaintiff's favor. *Marasco & Nesselbush, LLP v. Collins*, 6 F.4th 150, 166 (1st Cir. 2021) (citations omitted).

Plaintiff bears the burden of establishing subject-matter jurisdiction. *Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 64 (1st Cir. 2018). "[T]o establish standing" under Article III, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). These three requirements are the "irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560.

| Frederic Chardón-Dubos v. Joseph R. Biden, Jr., and the United States of America | Page 5 |
|---|---|

The first standing requirement has several prongs. "A 'concrete' injury must . . . actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). In other words, the injury "must be concrete in both a qualitative and temporal sense." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n. 1). If the plaintiff's theory of standing "relies on a highly attenuated chain of possibilities," it "does not satisfy the requirement that threatened injury must be certainly impending." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

The First Circuit has summarized the other two requirements, causation and redressability, as follows:

> Causation is established by demonstrating a causal connection between the injury and the conduct complained of, where the injury is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. [And] it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
> *Lyman*, 954 F.3d at 361 (cleaned up) (citing *Lujan*, 504 U.S. at 560–61).

| Frederic Chardón-Dubos v. Joseph R. Biden, Jr., and the United States of America | Page 6 |
|---|---:|

"In addition to" the three Article III requirements, "prudential concerns ordinarily require a plaintiff to show," amongst other things, "that his claim is not merely a generalized grievance." *Pagán v. Calderón*, 448 F.3d 16, 27 (1st Cir. 2006).[2] An "asserted harm is a 'generalized grievance' [if] shared in substantially equal measure by all or a large class of citizens," and "that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citations omitted).

With this legal framework in mind, the Court turns to the Complaint. Plaintiff alleges that the President "has failed to keep his Constitutional Oath made to the people of the United States of America"; that the "Executive Order is unconstitutionally circumventing Congresses' [sic] power to coin money"; that the Executive Order "is the De Facto equivalent of a congressional legislative action and subsequent Presidential signature"; that the "[d]eployment of the United States of America CBDC and its application

---

[2] *See also FEC v. Akins*, 524 U.S. 11, 24 (1998) ("*Whether styled as a constitutional or prudential limit on standing*, the Court has sometimes determined that where large numbers of Americans suffer alike, the political process, rather than the judicial process, may provide the more appropriate remedy for a widely shared grievance.") (emphasis added) (citations omitted).

without previous Congressional oversight will violate [Plaintiff's] Constitutionally and Federally protected First Amendment rights"; and that the Executive Order was in "violation of the separation of powers doctrine." *See* Docket No. 1, at ¶¶ 14, 45, 49, 53, 54. Plaintiff further alleges that the Executive Order has the "goal of establishing" a CBDC; that the Federal Reserve "*will be able* to surveil all FedNow transactions raising [sic] a financial privacy and anonymity issue for its consumer users"; that CBDC's "are the ultimate tool of control, censorship, and surveillance"; that the "rollout of CBDC *would* allow" the Federal Reserve "to perform . . . illegal actions"; and that the FedNow service "*will* incorporate technology that will make it programable [sic] giving [sic] the [Federal Reserve] the ability to turn off or on the CBDC for specific transactions." *Id.* at ¶¶ 9, 28, 30–31, pp. 7–8 (emphasis added).[3]

Plaintiff fails to carry his burden of showing that the Court has subject-matter jurisdiction. As is illustrated by the

---

[3] Note that FedNow is an instant payment service launched by the Federal Reserve on July 20, 2023. *See* Press Release, Federal Reserve, Federal Reserve announces that its new system for instant payments, the FedNow® Service, is now live (July 20, 2023), https://www.federalreserve.gov/newsevents/pressreleases/other20230720a.htm.

emphasis the Court added to the quoted parts of the Complaint, Plaintiff's alleged injury is neither "actual" nor "imminent." *TransUnion*, 594 U.S. at 423. On the contrary, Plaintiff's allegations rely "on a highly attenuated chain of possibilities." *Clapper*, 568 U.S. at 410. And they do not "affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting throughout *Lujan*, 504 U.S. at 560 n. 1).

Nor is there concreteness. The injury Plaintiff alleges does not "actually exist." *Spokeo* 578 U.S. at 340. The Federal Reserve has stated that it "has made no decision on issuing a [CBDC] and would only proceed with the issuance of a CBDC with an authorizing law," while its Chair, Jerome Powell, testified before the House Financial Services Committee in March 2023 that the Federal Reserve would need congressional approval for a CBDC. *See* Central Bank Digital Currency (CBDC) Frequently Asked Questions, Federal Reserve, https://www.federalreserve.gov/cbdc-faqs.htm. And the Executive Order itself concludes by stating that does not affect the legal authority of any executive department or agency, that it "shall be implemented consistent with applicable law and subject to the availability of appropriations," and that it does not create any legal right. *See*

| | |
|---|---|
| Frederic Chardón-Dubos v. Joseph R. Biden, Jr., and the United States of America | Page 9 |

Executive Order, § 10. Further, the Executive Order expects the "Attorney General, in consultation with the Secretary of the Treasury and the Chairman of the Federal Reserve," to deliver, first, within six months of the date of the Order "an assessment of whether legislative changes would be necessary to issue a United States CBDC, should it be deemed appropriate and in the national interest," and, second, "a corresponding legislative proposal" within seven months of the date of the Order. *See id.* at § 4(d). The Executive Order also expects various executive department and agency heads to engage "with foreign counterparts and in international fora to, as appropriate, adapt, update, and enhance adoption of global principles and standards for how digital assets are used and transacted, and to promote development of digital asset and CBDC technologies *consistent with our values and legal requirements*" and to "submit a report to the President on priority actions taken under the framework and its effectiveness." *See id.* at § 8 (emphasis added).

All this shows that Plaintiff does not carry his burden of demonstrating the "[f]irst and foremost" standing requirement. *See Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998). That determined, the Court sees no reason

to further analyze the Complaint to decide whether it fares any better as far as causation and redressability, the two other standing requirements, are concerned.

Mindful that "[t]he law of Article III standing . . . is built on separation-of-powers principles," *Clapper*, 568 U.S. at 408, this Court will not be "employ[ed] . . . as a forum in which to air . . . generalized grievances about the conduct of government." *Valley Forge Coll. v. Americans United*, 454 U.S. 464, 483 (1982) (quoting throughout *Flast v. Cohen*, 392 U.S. 83, 106 (1968)).

### b. Supplemental Jurisdiction over Puerto Rico Law Claim

In his Complaint, Plaintiff also alleges a claim for damages under Puerto Rico law. *See* Docket No. 1. Having dismissed Plaintiff's federal claims for lack of standing, the Court must determine whether it will exercise supplemental jurisdiction over Plaintiff's Puerto Rico law claim.[4]

---

[4] In his reply to Defendants' filing in opposition to his Motion to Amend or Supplement, Plaintiff essentially withdraws the Puerto Rico law claim. *See* Docket No. 43, at ¶ 17 ("Plaintiff dismisses the state law claims making [sic] this issue moot."). First, the Court notes that Plaintiff should have moved for voluntary dismissal. *See* Fed. R. Civ. P. 41. Second, notwithstanding Plaintiff's representations, the Court, in determining how to rule on the Motion to Dismiss, determines whether it should exercise supplemental jurisdiction here.

Where, as here, the "foundational federal claim" has been "terminat[ed]," "the stage" is set "for an exercise of the court's informed discretion." *Senra v. Town of Smithfield*, 715 F.3d 34, 41 (1st Cir. 2013) (quoting throughout *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256–57 (1st Cir. 1996)). In other words, "[n]o categorical rule governs the analysis," and "a court must weigh concerns of comity, judicial economy, convenience, and fairness." *Redondo Constr. Corp. v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011) (citations omitted).

While in "an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims," *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) (citation omitted), this is not such a situation. The Complaint was filed on March 22, 2023, a year and a half ago almost to the day. No discovery has been conducted. The case has by no means "matured well beyond its nascent stages." *Santana-Vargas v. Banco Santander P.R.*, 948 F.3d 57, 62 (1st Cir. 2020) (quoting throughout *Roche*, 81 F.3d at 257). Plaintiff has provided nothing more than a reference to "Article 1815, Puerto Rico Civil Code, 2020," in the Complaint, *see* Docket No. 1, at ¶ 57, as well as the amendment he seeks to introduce, *see* Docket

| | |
|---|---|
| Frederic Chardón-Dubos v. Joseph R. Biden, Jr., and the United States of America | Page 12 |

No. 29-1, at p. 14. He cannot be said to be "fac[ing] a significant burden in shifting to litigate the state-court claims in Spanish instead of English." *Santana-Vargas*, 948 F.3d at 61 (citing *Redondo*, 662 F.3d at 49–50). This is at the very least the "usual case in which all federal-law claims are eliminated before trial" and "the balance of factors . . . point[s] toward declining to exercise jurisdiction over the remaining state-law claims." *Rivera-Díaz v. Humana Ins. of P.R., Inc.*, 748 F.3d 387, 392 (1st Cir. 2014) (quoting throughout *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).

Plaintiff has no standing as to his federal law claims, and the Court will not exercise supplemental jurisdiction over his Puerto Rico law claim. Accordingly, the Motion to Dismiss at Docket No. 21 is **GRANTED**.

### ii. Plaintiff's Motion for Leave to Amend or Supplement the Complaint

Rule 15 of the Federal Rule of Civil Procedure permits a party to "amend its pleading once as a matter of course" within certain temporal limits. Fed. R. Civ. P. 15(a)(1). "In all other cases," a party can amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court may also "permit a party to serve

a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Plaintiff did not file within the 21-day limit under Rule 15(a)(1) for filing an amended complaint as a matter of course. Instead, he filed a Motion for Leave to Amend or Supplement the Complaint, citing Rules 15(a)(2) and 15(d). *See* Docket No. 29, at ¶¶ 1–2.

"Amended and supplemental pleadings differ" in that the "former relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading" and "the latter deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings." 6A Charles Alan Wright et al., Federal Practice and Procedure § 1504, 254-55 (3d ed. 2010). "Parties and courts occasionally confuse supplemental pleadings with amended pleadings and mislabeling is common," but "[t]hese misnomers are not of any significance [and] do not prevent the court from considering a motion to amend or supplement under the proper portion of Rule 15." *Id.* at 255. The Court is mindful of this state of affairs and will not be temporally and

definitionally rigid. The Court will not, for example, give weight to Plaintiff's apparent confusion in that his "basic reason for the request for leave to *amend* was [] *recent events*." *See* Docket No. 43, at ¶ 15 (emphasis added). For the reasons outlined below, Plaintiff's filings, examined based on their "context," *see Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 390 (1st Cir. 2013); *United States ex rel. Gadbois v. Pharmerica Corp.*, 809 F.3d 1, 7 (2015), fail to show standing be they considered under Rule 15(a)(2) or Rule 15(d).

Under Rule 15(a)(2), the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This "liberal stance towards the amendment of pleadings" is in line with "longstanding policy favoring the resolution of disputes on the merits." *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 36 (1st Cir. 2022) (citation omitted). However, the Court "must [not] mindlessly grant every request for leave to amend," and, "[w]hen a proffered amendment comes too late, would be an exercise in futility, or otherwise would serve no useful purpose, the district court need not allow it." *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 58 (1st Cir. 2006) (citations omitted).

Defendants argue that Plaintiff's proposed amended complaint is futile. *See* Docket No. 34. Plaintiff does not address this argument in his reply. *See* Docket No. 43. To not be futile, a proposed amendment under Rule 15(a)(2) has to "set[] forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory." *Hatch v. Dep't for Children, Youth and Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) (citation omitted). This is the standard for Rule 12(b)(6). *See id. See also Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996); *Privitera v. Curran (In re Curran)*, 855 F.3d 19, 28 (1st Cir. 2017). However, "a futility finding could also mean that the proposed complaint would require dismissal for other reasons, such as lack of subject-matter jurisdiction under Rule 12(b)(1)." *D'Agostino v. ev3, Inc.*, 845 F.3d 1, 6 n. 3 (1st Cir. 2016). In other words, where Rule 12(b)(1) dismissal for want of subject-matter jurisdiction is appropriate, the motion for leave to amend is futile and will be dismissed.

Plaintiff also cites Rule 15(d) as a basis for his Motion for Leave to Amend or Supplement the Complaint. *See* Docket No. 29, at ¶ 2. As the First Circuit explained in the one case

| Frederic Chardón-Dubos v. Joseph R. Biden, Jr., and the United States of America | Page 16 |
|---|---|

Plaintiff cites—or, rather, attempts to cite[5]—futility is a sufficient ground for denying a motion for leave to supplement under Rule 15(d), just as it is in the context of leave to amend under Rule 12(a)(2). *See Gadbois*, 809 F.3d at 7.

Plaintiff's Motion for Leave to Amend or Supplement Complaint, *see* Docket No. 29, the proposed amended complaint, *see* Docket No. 29-1, and Plaintiff's reply, *see* Docket No. 43, do nothing to cure the deficiencies of the original Complaint. They too fail to demonstrate the "irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560.

Plaintiff's Motion for Leave to Amend or Supplement the Complaint does nothing more than quote from Rules 15(a)(2) and 15(d) and from *Gadbois*.

As for the proposed amended complaint, Plaintiff claims that he has credit cards with two non-party banks, which, he alleges, commenced the "deployment of the digital dollar." *See* Docket No. 29-1, at ¶¶ 41–43. These actions,

---

[5] In his motion, Plaintiff quotes from "the case of US v. State of Maryland, 809 F.3d 1 (1st Cir. 2015)," Docket No. 29 at ¶ 3, which does not exist. In that part of the Federal Reporter, one can find *Gadbois*. The quoted passage from that case in the motion does exist. *Compare id. with Gadbois*, 809 F.3d at 4.

Plaintiff alleges, are "causing additional great concern to [him] resulting [sic] in damages for not knowing what will happen with his credit cards or his money for that matter.if [sic]." *See* Docket No. 29-1, at ¶ 44. These allegations create no standing against the Defendants, showing no injury in fact, causation, or redressability. *See TransUnion*, 594 U.S. at 423; *Lyman*, 954 F.3d at 361.

Plaintiff's proposed amended complaint and reply also make far-fetched assertions based on news articles, political and other developments both at home and abroad, and deliberations in the U.S. House of Representatives, *see* Docket Nos. 29-1, at ¶¶ 33–39, 45–48; 43, at ¶¶ 2–13. These do not show standing either. If anything, that the political branches are considering this matter is reason for this Court not to validate Plaintiff's attempt to use "the judicial process . . . to usurp the powers of the political branches." *Clapper*, 568 U.S. at 408 (citations omitted).[6]

Plaintiff's filings at Docket Nos. 29, 29-1, and 43 do not carry the burden of establishing subject-matter jurisdiction.

---

[6] The Court notes that Plaintiff's assertion that the House Financial Services Committee "passed" legislation, *see* Docket No. 43, at ¶ 5, is at odds with basic rules of parliamentary procedure. Congressional committees do not pass laws.

| Frederic Chardón-Dubos v. Joseph R. Biden, Jr., and the United States of America | Page 18 |
|---|---|

Plaintiff's request is thus futile. Accordingly, Plaintiff's Motion for Leave to Amend or Supplement the Complaint at Docket No. 29 is **DENIED**.[7]

### III. Plaintiff's *Pro Se* Status

The Court is cognizant of Plaintiff's *pro se* status. Generally, filings by *pro se* plaintiffs are construed liberally. *See Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 75–76 (1st Cir. 2014); *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). At the same time, Plaintiff is by all accounts a barred attorney,[8] and, "[w]hile pro se litigants sometimes are accorded a measure of latitude in procedural matters, no such latitude is warranted where, as here, the unrepresented party is himself a lawyer." *Barrett v. Lombardi*, 239 F.3d 23, 28 (1st Cir. 2001) (citations omitted).

---

[7] As far as the Puerto Rico law claim is concerned, all Plaintiff does in the proposed amended complaint, as in the original Complaint, is provide a reference to "Article 1815, Puerto Rico Civil Code, 2020." *See* Docket No. 29-1, at p. 14. The Court will not exercise supplemental jurisdiction over the claim under the proposed amendment for the same reasons it will not do so under the Complaint. *See supra*.

[8] Plaintiff's reply, for example, speaks of "Plaintiff Pro Se" and of the "undersigned attorney" and was submitted by the "FREDERIC CHARDON DUBOS LAW OFFICE," signed "Frederic Chardon Dubos." *See* Docket No. 43, at p. 9.

| Frederic Chardón-Dubos v. Joseph R. Biden, Jr., and the United States of America | Page 19 |
|---|---|

Here, even affording Plaintiff's Complaint the most liberal of constructions, the result remains the same. It remains the same still if no attention is paid to Plaintiff's legal, citation, grammatical, numbering, and other errors, only some of which are noted above, or to the fact that Plaintiff previously litigated *pro se* generalized grievances against the United States before this Court and lost on standing grounds. *See Chardon-Dubos v. United States*, No. CV 07-1966, 2007 WL 776823 (D.P.R. Mar. 12, 2007), *aff'd*, 273 F. App'x 5 (1st Cir. 2008) (*per curiam*).

Put simply, Plaintiff fails to "sufficiently answer the question: What's it to you?" *TransUnion*, 594 U.S. at 423 (cleaned up) (quoting Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)).

### IV. Conclusion

In view of the above, the Court **GRANTS** the Motion to Dismiss at Docket No. 21 and **DENIES** the Motion for

| Frederic Chardón-Dubos v. Joseph R. Biden, Jr., and the United States of America | Page 20 |
|---|---|

Leave to Amend or Supplement the Complaint at Docket No. 29. This case is hereby **DISMISSED WITHOUT PREJUDICE**.[9]

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September 2024.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE

---

[9] Given that the dismissal is for want of standing, the Court is bound to dismiss without prejudice. *See In re Evenflo Co., Inc., Mktg., Sales Practices & Prods. Liab. Litig.*, 54 F.4th 28, 42 (1st Cir. 2022) ("[A] dismissal for lack of Article III standing must operate without prejudice.") (emphasis in original) (quoting throughout *Hochendoner*, 823 F.3d at 736).